IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SEAN ROBISON,<br><br>　　Plaintiff,<br><br>　　v.<br><br>K2D, LLC, f/k/a K2D, Inc., d/b/a Colorado Premium Foods, a Colorado corporation, et al.,<br><br>　　Defendants. | CIVIL ACTION FILE<br>NO. 1:24-CV-3272-TWT |

**OPINION AND ORDER**

This is a products liability action. It is before the Court on the Defendants K2D, Inc. of Colorado and K2D, LLC's[1] Motion to Dismiss [Doc. 10], the Defendant North Star Imports, LLC's Motion to Dismiss [Doc. 22], and Defendant Grant Park Packing Company, Inc.'s Motion to Dismiss [Doc. 25]. For the reasons that follow, these Motions to Dismiss [Docs. 10, 22, 25] are GRANTED.

I. **Background**[2]

This case arises from injuries the Plaintiff Sean Robison alleges he suffered as a result of consuming hamburger or ground beef contaminated with E. coli O103 on April 14 or 15, 2019, in Virginia Beach, Virginia. (Compl. ¶¶ 10,

---

[1] For ease of reference, the Court will refer to Defendants K2D, LLC and K2D, Inc. of Colorado collectively as "K2D."

[2] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

13). Within 24 to 48 hours after consuming the beef, Robison began feeling extremely ill and was admitted to the hospital on April 16, 2019. (*Id.* ¶ 11). Robison was diagnosed with an E. coli infection, which resulted in a further diagnosis of hemolytic uremic syndrome, caused his kidneys to fail and necessitated a kidney transplant, and put him into a coma. (*Id.* ¶¶ 12, 22-24). Robison alleges that the beef products he consumed were "manufactured, processed, distributed, and sold" by the Defendants to him, and that a CDC investigation showed that the E. coli O103 strain was traced to the K2D and Grant Park packing plants and to US Foods and North Star as the distributors. (*Id.* ¶¶ 12-13). As a result, K2D and Grant Park recalled the subject beef products from their plants. (*Id.* ¶¶ 20-21).

As relevant to the present Motions, Robison alleges that K2D's plant is located in Carrollton, Georgia and Grant Park's plant is located in Illinois. (*Id.* ¶ 20). He further alleges that K2D sold and distributed its meat products through distributors, including US Foods in Norcross, Georgia, and that US Foods in turn distributed K2D's products in Virginia Beach, Virginia. (*Id.* ¶¶ 32-33). He also alleges that North Star sold and distributed Grant Park's products in Virginia Beach. (*Id.* ¶ 34). North Star is a Minnesota-based LLC whose sole member is a citizen of Minnesota. (*Id.* ¶ 7; Not. of Removal, ¶ 19). Though unclear due to the lack of headings, Robison appears to raise claims against all of the Defendants for strict liability, "breach of the implied

2

merchantability of fitness for a particular purpose," failure to warn, negligence, and "various provisions of the Georgia Food Act . . . and Virginia Food Act . . . . (Compl. ¶¶ 17-19, 26, 30-31, 35-36). Robison also seeks attorney's fees. (*Id.* ¶ 39).

Robison originally filed this action in Gwinnett County State Court and K2D removed to this Court with the consent of the other Defendants on July 24, 2024. K2D and Grant Park each moved to dismiss under Rule 12(b)(6), while North Star moved to dismiss under Rule 12(b)(2) and, alternatively, Rule 12(b)(6). The Court will address each motion in turn.

## II. Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d

247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff has the burden of establishing a prima facie case by presenting enough evidence to withstand a motion for directed verdict." *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021). In evaluating a plaintiff's case, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). Where the defendant contests the allegations of the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "And where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must draw all

4

reasonable inferences in the plaintiff's favor." *Mortgage Invs. Corp.*, 987 F.3d at 1356.

### III. Discussion

Because K2D and Grant Park raise very similar arguments under Rule 12(b)(6), and Robison's response to each is nearly identical, the Court will address their Motions to Dismiss in tandem before turning to North Star's Motion to Dismiss.

#### A. K2D and Grant Park's Motions to Dismiss

Both K2D and Grant Park argue that Robison fails to state a claim against them because he has not specifically identified the product that he alleges caused his injuries and, therefore, there is no reasonable inference that they manufactured or supplied the offending product. (K2D's Mot. to Dismiss, at 4-9); (Grant Park's Mot. to Dismiss, at 4-8). They contend that, under Georgia law, specific product identification is necessary for the threshold element of proximate causation for any product liability-based claim, including the strict liability, negligence, breach of implied warranties, and failure to warn claims that Robison appears to raise here. (K2D's Mot. to Dismiss, at 5-6); (Grant Park's Mot. to Dismiss, at 5-6).

Robison responds that he would have pled the specific retailer or restaurant that he purchased the offending product from if he knew who it was but asserts that he has sufficiently pled that the product he consumed is

5

traceable to K2D and Grant Park. (Pl.'s Resp. to K2D's Mot. to Dismiss, at 1-3); (Pl.'s Resp. to Grant Park's Mot. to Dismiss, at 1-3). In particular, Robison contends that he "pleads the specific genetic strain of the E. coli (O103) bacteria he was stricken with and that the strain is directly traceable to K2D, Grant Park, and their distributors." (Pl.'s Resp. to K2D's Mot. to Dismiss, at 2); (Pl.'s Resp. to Grant Park's Mot. to Dismiss, at 2).

As an initial matter, the Court notes that the parties rely on 11th Circuit and Georgia law in their briefing notwithstanding the fact that Robison alleges he consumed the beef product at issue in Virginia. For clarity, Georgia's choice-of-law rules dictate that Georgia common law applies where, as here, no specific statutory violations are alleged.[3] *Frank Briscoe Co., Inc. v. Georgia Sprinkler Co., Inc.*, 713 F.2d 1500, 1503 (11th Cir. 1983). "Under Georgia law, whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of a product liability case." *Hoffman v. AC&S, Inc.*, 248 Ga. App. 608, 610 (2001) (quotation marks, citation, and brackets omitted). In particular, "unless the manufacturer's defective product can be shown to be the proximate cause of the injuries there can be no recovery. A manufacturer has the absolute right to have his strict liability for injuries

---

[3] Although Robison did generally cite the Virginia Food Act, he does not specifically cite a provision of that Act that he alleges K2D and Grant Park violated. In any event, the Act puts the enforcement mechanism in the hands of the Commissioner, not private individuals. *See, e.g.*, Va. Code § 3.2-5100. Thus, Robison's claim under that Act necessarily fails.

6

adjudged on the basis of . . . his own marketed product and not that of someone else." *Id.* (quotation marks, citation, and brackets omitted).

More generally, "product identification is a necessary element of a [product liability] tort claim. The threshold for every theory is proof that an injured plaintiff was exposed to [contaminated] products for which the defendant is responsible." *Davis v. John Crane, Inc.*, 353 Ga. App. 243, 244-45 (2019) (quotation marks, citations, and brackets omitted). With regard to food poisoning cases, "[i]llness alone cannot establish proximate cause; a mere showing that a person became sick subsequent to eating food is insufficient." *Mann v. D.L. Lee & Sons, Inc.*, 245 Ga. App. 224, 224 (2000). Indeed, "[a] person claiming injury from consuming allegedly unwholesome food must show a causal link between that food and the resulting illness." *Id.*

Viewing the facts in the light most favorable to Robison, the Complaint is subject to dismissal because Robison has alleged neither the beef product he consumed nor where he purchased the product and therefore fails to make any allegations of proximate cause as to either K2D or Grant Park. The Court pauses to note that *Hoffman*, *Davis*, and *Mann* were all cases addressing the evidentiary burdens at the summary judgment stage, whereas the motion to dismiss stage relies solely on the factual allegations of the Complaint. Nonetheless, these cases are instructive in that if Robison would be required to prove proximate cause via a link between a specific, defective product made

7

by a specific manufacturer and the illness he suffered to survive summary judgment, he is necessarily required to adequately *plead* it in order to survive a motion to dismiss. *See, e.g.*, *Erickson*, 551 U.S. at 93 (stating that the notice pleading requirement requires the plaintiff to give the defendant fair notice of his claim and the grounds upon which it rests). Based on the facts alleged in the Complaint, K2D and Grant Park have not been put on fair notice of a claim arising from the consumption of any of their specific products. Robison's argument that he does not know "at the moment" the restaurant or other location where he purchased the beef product does not hold any weight because the identify of the retailer is not something that would come out in discovery, since only Robison could know who the retailer was. Without any allegations regarding product identification, there is no causal link between an allegedly defective product manufactured by either K2D or Grant Park and Robison's claimed illness, and Robison's claims against these Defendants necessarily fail. *Davis*, 353 Ga. App. at 244-45; *Hoffman*, 248 Ga. App. at 610 (noting that "proximate cause is a necessary element of a product liability case").

Robison's reply focuses on the extent of his illness and resulting medical complications. While the Court is sympathetic to the suffering Robison has endured, his illness alone does not bridge the gap between the specific product he allegedly consumed and the Defendant manufacturers. *Mann*, 245 Ga. App. at 224 ("[A] mere [allegation] that a person became sick subsequent to eating

8

food is insufficient."). Nor does the fact that K2D and Grant Park issued recalls for E. coli O103 contamination, without more, suffice to bridge the gap. *See id.* ("A person claiming injury from consuming allegedly unwholesome food must show a causal link between that food and the resulting illness."). Instead, even viewed in Robison's favor, the Complaint requires the Court to imply that he must have contracted E. coli O103 from one of K2D or Grant Park's beef products solely because they issued recalls for that strain of E. coli around the same time as he ate beef of unknown origin in Virginia, one of the places that these Defendants' products are distributed. This the Court cannot do. *Twombly*, 550 U.S. at 555 (providing that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" and that "[f]actual allegations must be enough to raise a right to relief above the speculative level." (quotation marks, citations, and brackets omitted)). For these reasons, the Court will grant K2D and Grant Park's Motions to Dismiss [Docs. 10, 25].

Finally, the Court notes that Robison did not request leave to amend in his responses in opposition to the Motions. As Robison is represented by counsel, the Court is not required to grant Robison an opportunity to amend his Complaint sua sponte and declines to do so here. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).

9

### B. North Star's Motion to Dismiss

In its Motion to Dismiss, North Star argues that the Court lacks personal jurisdiction over it for two primary reasons. (North Star's Mot. to Dismiss, at 6-7). North Star contends that, although it transacts business within Georgia and is therefore subject to the long-arm statute, the mandates of due process are not satisfied. (*Id.* at 7). First, as to specific jurisdiction, North Star asserts that none of Robison's claims arise out of North Star's contacts with Georgia. (*Id.*). Second, as to general jurisdiction, North Star argues that its contacts with the state, which include sales to "two or three Georgia-based customers . . . account[ing] for less than 2% of North Star's annual sales and the purchase of a comparatively small volume of products from a Georgia-based supplier," do not rise to the level of "continuous and systematic" contacts with the state required to establish general jurisdiction. (*Id.* at 7-11).[4] North Star supports its Motion with the affidavit of its CEO and sole member, Jacob Goldberger. (North Star's Mot. to Dismiss, Ex. 2). Alternatively, North Star argues that Robison has failed to state a claim against it under Rule 12(b)(6). (North Star's Mot. to Dismiss, at 11-17).

Although the Court cannot grant North Star's motion by default, it notes that it was Robison's burden to produce evidence supporting personal

---

[4] Robison did not respond to North Star's personal jurisdiction arguments. (*See* Resp. in Opp. to North Star's Mot. to Dismiss, [Doc. 31], at 1-4).

jurisdiction in light of North Star's challenge and supporting affidavit, and Robison has not attempted to do so here. *Stubbs*, 447 F.3d at 1360. A federal court sitting in diversity undertakes a two-step inquiry to determine whether it has personal jurisdiction over a nonresident defendant: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010). "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Id.* at 1258 (quotation marks omitted). Thus, this Court must interpret and apply Georgia's long-arm statute in the same manner as the Georgia Supreme Court. The statute, codified at O.C.G.A. § 9-10-91, confers specific personal jurisdiction over an out-of-state defendant if, among other things, he "[t]ransacts any business within [Georgia][.]" O.C.G.A. § 9-10-91(1); *see also Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422, 429 (2021). "[J]urisdiction exists on the basis of transacting business in [Georgia] if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." *Amerireach.com*

11

*v. Walker*, 290 Ga. 261, 269 (2011) (citation omitted). However, "it is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518 (2006).

If a state's long-arm statute is satisfied, the next step is to assess personal jurisdiction under constitutional due process principles. A court may exercise either general or specific jurisdiction over an individual not domiciled in the state: "[g]eneral jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated, while specific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint[.]" *Stubbs*, 447 F.3d at 1360 n. 3 (citation omitted). Under either scenario, a court must ensure that "the defendant has 'certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (alteration and quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum-contacts inquiry "ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated

12

with the state." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

### 1. Georgia Long-Arm Statute

Here, North Star concedes that it is subject to the Georgia long-arm statute because it transacts business within the state, so the Court need not address this prong further. *See* O.C.G.A. § 9-10-91(1). Next, the Court turns to the due process considerations.

### 2. Due Process Concerns

First, North Star is not subject to specific jurisdiction in Georgia under the facts alleged in the Complaint. Critical to the specific jurisdiction inquiry is the requirement that "the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quotation marks, citations, and brackets omitted). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* There is no such occurrence here. North Star is a distribution company that purchases food products from manufacturers and delivers them to its customers. (North Star's Mot. to Dismiss, Ex. 2 ¶¶ 5-6). North Star's only connection to Georgia is its sales to three customers, none of which are associated with this case, which totaled 1.6% of its sales in 2019. (*Id.*

13

¶ 7). In 2024, North Star sold meat products to only two customers in Georgia, neither of which are connected to this case. (*Id.* ¶ 10). Robison's only allegations pertaining to North Star's activities are that it distributed Grant Park's meat products in Georgia and Virginia, among other states, but his claim arises out of the alleged distribution of those products to Virginia, where he alleges he consumed the contaminated beef—not Georgia. (Compl. ¶¶ 10, 19). Thus, North Star's activities in Georgia "are [not] related to the cause of action alleged in the complaint." *Stubbs*, 447 F.3d at 1360 n. 3 (citation omitted).

Second, North Star is also not subject to general jurisdiction in the state. North Star is a Minnesota-based company that has no Georgia-resident members, it has no employees here, and it does not maintain any offices here. *See Bristol-Myers Squibb Co.*, 582 U.S. at 262; (North Star's Mot. to Dismiss, Ex. 2 ¶¶ 2-4). Although a foreign company can be subject to general jurisdiction in a state where its "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State," *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014), North Star's minimal affiliations with Georgia fail to satisfy this standard. Here, North Star's contacts with the state appear to arise only via sales to two or three customers per year, representing an insignificant portion of its overall sales volume. Therefore, the Court finds that even assuming the exercise of personal jurisdiction over North Star is

14

proper under the Georgia long-arm statute, it would not comport with the mandates of due process. *See Diamond Crystal Brands, Inc.*, 593 F.3d at 1257-58. Accordingly, because the Court cannot exercise personal jurisdiction over North Star, its Motion to Dismiss [Doc. 22] will be granted pursuant to Rule 12(b)(2). As a result, the Court need not address the parties' arguments under Rule 12(b)(6).

### C. Attorney's Fees Claim

Finally, because the Court is dismissing the entirety of Robison's substantive claims on the merits, his attorney's fees claim necessarily fails as well. *Hobbs through Eagle v. Integrated Fire Prot., Inc.*, 357 Ga. App. 790, 802 (2020).

### IV. Conclusion

For the foregoing reasons, the Defendants K2D, Inc. of Colorado and K2D, LLC's Motion to Dismiss [Doc. 10] and the Defendant Grant Park Packing Company, Inc.'s Motion to Dismiss [Doc. 25] are GRANTED. The Defendant North Star Imports, LLC's Motion to Dismiss [Doc. 22] is GRANTED without prejudice.

SO ORDERED, this ___13th___ day of February, 2025.

THOMAS W. THRASH, JR.
United States District Judge

15